IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**SEAN SAULA**,                                        6:21-cv-01648-AA
                                              **OPINION & ORDER**
                    Plaintiff,

        v.

**CITY OF NEWPORT,** et al.,

                    Defendants.

_____

AIKEN, District Judge.

        Plaintiff Sean Saula was arrested on charges of unlawful possession of heroin
and methamphetamine.  Plaintiff brings this action against the City of Newport and
Detective Jon Humphreys ("Defendants") for wrongful arrest under state and federal
law.  Before the Court is Defendants' Motion for Summary Judgment, ("Mot.") ECF
No. 26.  For the reasons explained, Defendants' motion is GRANTED.

## STANDARDS

        Summary judgment is appropriate where the moving party "shows that there
is no genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(a) (2019).  The moving party bears the initial

burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the party asserting that a fact cannot be genuinely disputed must support that assertion with admissible evidence. Fed. R. Civ. P. 56(c).

If the moving party establishes the absence of a genuine issue of material fact, the nonmoving party must go beyond the allegations in the complaint to demonstrate a genuine issue for trial. *Celotex*, 477 U.S. at 324. A party cannot defeat a summary judgment motion by relying on the allegations set forth in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment thus should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The court views the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976)

## BACKGROUND

In Newport, Oregon on November 19, 2019, police officers of the Newport Police Department stopped Andrew Forcier for a traffic violation. Compl. ¶¶ 7, 8. Forcier told police that he had methamphetamine in his car. *Id.* ¶ 9. Mid-stop, Detective Jon Humphreys arrived on scene. During questioning, Forcier told Humphreys that

he had stolen the meth from a man named Lonnie Larson at plaintiff's house.  *Id*. ¶¶ 10, 12.  Forcier explained that he and Larson had been hanging out at plaintiff's house in the basement, and that Larson brought over a backpack containing a quarter pound of meth and a large amount of heroin.  *Id*. ¶ 11; Stabler Decl., Ex. 2 at 10, ECF No. 28.  Humphreys asked Forcier to return to the house to confirm that Larson was still there.  Forcier complied and confirmed Larson's presence.

Humphreys then wrote an affidavit and sought a search warrant for plaintiff's residence and for Larson.  Humphrey's affidavit specified that Humphreys had "probable cause to believe" there was evidence of the crimes of "possession of a controlled substance," "delivery of a controlled substance," and "manufacture of a controlled substance" at plaintiff's house.  Stabler Decl., Ex. 2 at 2.  The affidavit described the residence as one divided into three separate living quarters and requested authorization to search the entire residence.  *Id*. at 2-3, 9.

Lincoln County Circuit Court Judge Sheryl Bachart issued the warrant.  *Id*. at 1.  Before Humphreys could execute the warrant, officers surveilling plaintiff's house spotted Larson leaving on foot and could not apprehend him.  Humphreys proceeded with the warrant to search the premises because he believed the drugs were still inside and worried that the occupants had been warned about the impending search and would destroy potential evidence.  Humphreys Decl., ¶ 7.

When police arrived, plaintiff was in the yard working on a car.  Resp. at 3, ECF No. 34.  Inside the house were five adults and a 15-year-old, who was plaintiff's girlfriend's son.  Officers searched the entire residence, including plaintiff's living

area on the top floor of the house.  Humphreys Decl. ¶¶ 11-13.  In the basement and common area, officers found drug use paraphernalia and usable amounts of meth and heroin.  Compl. ¶ 20.  In plaintiff's living area, Humphreys found a syringe, baggies, a piece of foil with burnt residue on it, and a plastic container holding a white crystalline residue.  *Id* ¶ 9; Stabler Decl., Ex. 3.  Detective Humphreys arrested plaintiff and he was charged with four counts: Count 1: Unlawful Possession of Heroin, ORS 475.854; Count 2: Unlawful Possession of Methamphetamine, ORS 475.894; Count 3: Frequenting a Place Where Controlled Substances are Used, ORS 167.222; Count 4: Child Neglect in The First Degree, ORS 163.547.  Compl. ¶ 24.

After plaintiff's arrest, Humphreys submitted a Probable Cause Affidavit, specifying the factual basis for the crimes plaintiff committed.  Stabler Decl., Ex. 4.  On November 17, 2019, a Lincoln County Circuit Court Judge determined that probable cause existed for plaintiff's arrest.  *Id*

During Plaintiff's arraignment, the state court addressed Plaintiff's custody status and bail.  Stabler Decl., Ex. 7, 2:17-3:17.  The attorney representing plaintiff at the arraignment moved for plaintiff's release.  *Id*. at 3:11-14.  Lincoln County's pretrial release services recommended plaintiff's release from custody.  Stabler Decl., Ex. 8; Ex. 7, 3:4-6.  The prosecution deferred to the court's discretion and took no position on plaintiff's release.  Stabler Decl., Ex. 7, 3:8-10.  The court, on its own motion, set plaintiff's security at $100,000.  Stabler Decl., Ex. 6; Ex. 7, 3:15-17.  Humphreys was not present at the release hearing and had no role in the court's decision to increase security to $100,000.  Stabler Decl., Ex. 1, 143:7-11; Humphreys

Decl., ¶ 18.  Plaintiff moved to suppress the search of his residence stemming from the execution of the search warrant.

On December 23, 2019, Plaintiff fired his attorney, requesting a new one from the court.  The court allowed Plaintiff's attorney to withdraw and could not find a new attorney for Plaintiff for a few weeks.  Stabler Decl., Ex. 1, 144:18-145:3; Ex. 13. The court postponed the trial date because of the withdrawal to give the new attorney a chance to get up to speed.  Stabler Decl., Ex. 16.  That resulted in Plaintiff's custody extended until February 24, 2020.  On that date, the prosecution reported that they were not prepared to proceed to trial, or on the motions to suppress that plaintiff filed. Stabler Decl., Ex. 17.  Accordingly, the court ordered Plaintiff's release from custody. *Id*.  Plaintiff was in custody for 104 days and was released from jail on February 27, 2020.

On June 17, 2020, the court heard Plaintiff's motion to suppress.  Stabler Decl., Ex. 18.  On July 23, 2020, Lincoln County Judge Thomas Branford granted Plaintiff's motion to suppress, ruling that the search warrant was based on probable cause but was overbroadly executed.  Stabler Decl., Ex. 19.  Judge Branford noted "the search warrant in this case does not violate the particularity requirement of Article I, section 9 [of the Oregon Constitution].  It was the execution of the search warrant that transgressed the Article I, section 9 rights of [Plaintiff]."  *Id*. at 23.

Judge Branford further found that "[Humphreys] had probable cause for a search warrant to search Larson's person and backpack, but only in the basement of the house."  *Id*. at 30.  Judge Branford held that upon learning that Larson had left

the residence, Humphreys "should have composed an amended affidavit seeking a new search warrant." *Id*. at 31.

## DISCUSSION

Plaintiff brought this action alleging "wrongful arrest" and "false imprisonment" under common law. Compl. ¶¶ 31, 34. Plaintiff also brings a claim under 42 U.S.C § 1983 for violating his rights under the Fourth Amendment to be free from unreasonable seizure. *Id*. ¶ 38. In his remaining claim for relief, plaintiff asserts that Humphreys was a final policymaker and that he is liable to plaintiff under § 1983 based on *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978).

## I.    Wrongful Arrest and False Imprisonment

In his first two claims for relief, Plaintiff alleges that Humphreys (1) wrongfully arrested and (2) falsely imprisoned him based on the search of plaintiff's living area, in which plaintiff claims Humphreys never found meth or heroin. Compl. ¶¶ 32, 33, 35-36.

Under Oregon law, "wrongful arrest" and "false imprisonment" are synonymous and interchangeable titles for a single tort claim. *Hiber v. Creditors Collection Serv. of Lincoln Cnty., Inc.*, 154 Or App 408, 413 (1998). Courts in this District also recognizes that "wrongful arrest and wrongful imprisonment have the same elements under Oregon law." *See Wagoner v. City of Portland*, 2017 WL 2369399, at *5 (D. Or. May 31, 2017). Thus, the Court analyzes these two claims together.

Claims for wrongful arrest contain four elements: (1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful. *Fossen v. Clackamas County*, 271 Or App 842, 847 (2015). To prevail on a claim for wrongful arrest, "it is fundamental that the arrest must have been a false arrest, *i.e.,* one made without legal authority. If the arrest was lawful, then it was privileged." *Napier v. Sheridan*, 24 Or App 761, 765 (1976).

The existence of probable cause renders an arrest lawful. *Miller v. Columbia County*, 282 Or. App. 348, 355 (2016). An arrest is lawful "if an officer has probable cause to believe that a person has committed a felony or a misdemeanor." *Id*. (citing ORS 133.310(1)(b).) "Thus, by rendering an arrest lawful, the existence of probable cause necessarily defeats a claim of false arrest." *Miller*, 282 Or App at 355.

It is a court's duty to determine whether an officer had probable cause to arrest. *Id*; *see also Gustafson v. Payless Drug Stores*, 269 Or. 354, 358 (1974) ("It is the court's function, not the jury's function, to determine the issue of probable cause.") In addition, "if a person is arrested for two or more offenses simultaneously, probable cause for one charge is a complete defense to an action of false arrest." *LeRoy v. Witt*, 12 Or App 629, 631 (1973). Likewise, if an officer gives an invalid reason for an arrest, but the officer has probable cause for a different, valid reason for making the arrest, this will be a defense to false arrest. *Bacon v. City of Tigard*, 81 Or App 147, 150 (1986). "An officer has probable cause to make an arrest if the officer subjectively believes that a crime has been committed and the officer's subjective belief is

objectively reasonable under the circumstances." *Miller*, 282 Or. App. at 357 (citing *State v Miller*, 345 Or. 176, 184 (2008)).

Here, whether Defendants' conduct satisfies the first three elements of wrongful arrest is not in dispute—there is no question that Plaintiff was arrested. The only issue disputed is whether the arrest was justified as lawful.

Defendants present evidence that plaintiff was arrested for three criminal offenses: Unlawful Possession of Methamphetamine, Frequenting a Place Where Controlled Substances are Used, and Endangering the Welfare of a Minor.

At the time of plaintiff's arrest, Unlawful Possession of Methamphetamine was a Class A Misdemeanor or Class C Felony under ORS 475.894. This offense is a Class A Misdemeanor if the "person knowingly or intentionally possess[es] methamphetamine." ORS 475.894(1)-(2). Possession under the statute becomes a Class C Felony if "the person possesses a useable quantity of methamphetamine, and at the time of the possession, the person has a prior felony conviction." ORS 475.894(1)-(2)(b)(A)(i); *see also* ORS 161.015(9) (defining "possession"). Possession can be actual or constructive. *State v. Sherman*, 270 Or App 459, 461 (2015). Constructive possession requires proof that a suspect exercised control over, or had the right to control, the contraband. *State v. Bauer*, 128 Or App 598, 601 (1994). "Evidence that the contraband is found in quarters owned or occupied by the defendant is sufficient to allow the inference that he controls or has the right to control its contents, even though others may be present and may share control jointly." *State v. Nehl*, 19 Or App 590, 592 (1974).

Summarizing the above principles, to demonstrate as a matter of law that Humphreys had probable cause to arrest plaintiff for a misdemeanor level of unlawful possession, Defendants must show that Humphreys reasonably believed that Plaintiff was intentionally or knowingly in possession of methamphetamine. To arrest Plaintiff for felony possession, defendants must show that Humphreys reasonably believed that plaintiff was in possession of a useable quantity of methamphetamine, and, at the time, had a prior felony.

The evidence presented in the parties' briefing, declarations, and exhibits is that Humphreys found what he reasonably believed to be evidence of methamphetamine and methamphetamine use paraphernalia in plaintiff's bedroom. *See* Humphreys Decl., ¶ 13; Stabler Decl., Ex. 3 (reports from the scene that, during protective sweep, Humphreys saw used syringes; empty baggies like those used to store drugs; a piece of foil containing a burnt substance Humphreys believed to be heroin; and a plastic container with white crystalline substance appearing to be methamphetamine).

Humphreys' discovery of this evidence is more than sufficient to support an objectively reasonable belief that plaintiff had "physical possession" or otherwise exercised "dominion or control over" the methamphetamine located in plaintiff's bedroom. *Bauer*, 128 Or App at 601. Evidence that Humphreys found methamphetamine in plaintiff's bedroom supports a reasonable inference that plaintiff was in possession of it, exercised control over it, or had the right to exercise control over it.

Plaintiff does not dispute that those items were found in his room,[1] therefore, Defendants' evidence shows that Humphreys had probable cause to believe Plaintiff committed the crime of Unlawful Possession of Methamphetamine at the misdemeanor level. In addition, that Humphreys objectively believed that the methamphetamine found constituted a usable quantity, and that Plaintiff was a convicted felon.

Defendants have thus produced evidence that Humphreys had probable cause to believe Plaintiff committed this crime at the felony level. The fact that the evidence seized was later suppressed in Plaintiff's criminal proceeding does not change this analysis. This is because the exclusionary rule does not apply in proceedings brought under 42 U.S.C. § 1983. *Lingo v. City of Salem*, 832 F.3d 953, 959 (9th Cir. 2016). (*See also Crockett v. City of Gresham*, No. 3:18-CV-00800-HZ, 2019 WL 2011045, at *5 (D. Or. May 3, 2019) ("There is no dispute of fact that at the time of the arrest [defendant] had probable cause to believe that plaintiff had violated Oregon law . . . The fact that the initial stop was unlawful does not bear on this analysis.").

---

[1]    Plaintiff's assertion amounts to an admission that he committed the crime of Unlawful Possession of a Schedule III Controlled Substance on November 15, 2019, in violation of ORS 475.752(3)(c)(d). Plaintiff admitted that the syringes located in his living area were used to ingest (illegal anabolic) steroids and Plaintiff admitted using this illicit substance inside his residence. Stabler Decl., Ex. 1, 90:1-9. Anabolic steroids are classified as Schedule III controlled substance. 21 U.S.C. § 802(41) & 812(c). Thus, Plaintiff's admitted possession and use of anabolic steroids is an admission of his violation of both state and federal law. Even if Plaintiff's admission is construed as a disingenuous explanation for the syringes and methamphetamine paraphernalia located in his living area, it still amounts to circumstantial evidence of Plaintiff's culpability and *mens rea* regarding the other criminal activity Detective Humphreys believed Plaintiff was responsible for.

Defendants also submit evidence of probable cause to believe that Plaintiff committed the crime of Endangering the Welfare of a Minor, relating to the 15-year-old child (Caleb Sherman) living at Plaintiff's residence. Stabler Decl., Ex. 1, 60:18-61:5; Humphreys Decl., ¶ 11. Further, that Humphreys had probable cause to believe that Plaintiff committed the offense of Frequenting a Place Where Controlled Substances are Used under ORS 167.222, where he kept, maintained, or frequented a place while knowingly permitting persons to use controlled substances in that place. Stabler Decl., Ex. 4; Stabler Decl., Ex. 2, p. 10. Plaintiff produces no evidence to the contrary on these claims.

On any of these theories, the record demonstrates that Defendants had probable cause to arrest Plaintiff and Plaintiff has not met his burden to produce any evidence that creates a dispute of fact. Therefore, Defendants are granted summary judgment on Plaintiff's first and second claim.

## II.    Unlawful Seizure Under the Fourth Amendment; 42 U.S.C. § 1983

In his third claim, Plaintiff alleges that the City of Newport and Detective Humphreys were unreasonable when they seized Plaintiff "because the search warrant that was issued for the search of the entire residence of 305 SW 9th Street in Newport, Oregon, although [Forcier] informed [Humphreys] that he only saw methamphetamines and heroin in the main level living area, and in the basement living area only." Compl. ¶ 38. Alternatively, Plaintiff alleges that "illegal contraband was never found in Plaintiff's individual living space." *Id.*

Defendants correctly point out that Plaintiff's Fourth Amendment claim does not allege an unlawful search. Mot at 21. Defendants assert that Plaintiff's claim that he was unlawfully seized fails as a matter of law because Humphreys is entitled to qualified immunity and no Fourth Amendment violation occurred because, as explained above, Humphreys had probable cause for Plaintiff's arrest. *Id*.

### A.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal citations omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed considering the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

In the context of search warrants, "where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546

(2012) (internal citations omitted). The "shield of immunity otherwise conferred by the warrant, will be lost, for example, where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 547 (internal citations omitted).

The threshold for establishing an exception to this "shield of immunity" is a high one, because:

> In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.
>
> It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable.

*Id*. at 547-58 (internal citations and formatting omitted).

In this case, Defendants show that Humphreys applied for and obtained a search warrant for the entire residence at 305 SW 9th Street. Stabler Decl., Ex. 2 at 1-3. In doing so, Humphreys specified that the residence contained three living areas and noted Plaintiff resided in the upstairs living area. *Id*. at 9. Humphreys' search warrant affidavit stated the information learned from Forcier, which corroborated Humphreys' information about the existence of "heavy drug activity at 305 SW 9th Street for several months." *Id*.

The record shows that the information contained in the search warrant affidavit, combined with Humphreys' training and experience, set forth a factual basis sufficient to demonstrate that Detective Humphreys acted in an objectively reasonable manner in applying for and executing the search warrant.

As noted above, the state trial court ruled that "the search warrant in this case does not violate the particularity requirement of Article I, section 9 [of the Oregon Constitution]," but that the execution of the search warrant "transgressed the Article I, section 9 rights of [Plaintiff]." Stabler Decl., Ex. 19 at 23.

Plaintiff does not supply evidence to support a conclusion that Humphreys relied on a warrant that was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 565 U.S. at 547-48. As the state trial court found, Larson's presence in the house, combined with Humphreys' other knowledge, provided probable cause to search Plaintiff's individual area. Plaintiff presents no facts or allegations showing that Judge Bachart's issuance of the search warrant exceeded her professional competence. As a result, Humphreys, as "the officer who requested the warrant cannot be held liable." *Id.*, at 547-48.

Defendants supply evidence of a search warrant affidavit notating that Humphreys had probable cause not limited solely to Larson. The search warrant authorized the search of Plaintiff's entire residence. Stabler Decl., Ex. 2, at 1-3. This was because Humphreys had long suspected Plaintiff's residence was the source of heavy drug trafficking activity. Stabler Decl., Ex. 2 at 9. Thus, even though Humphreys knew Larson departed from Plaintiff's residence, Humphreys still had

probable cause to believe Plaintiff's residence contained evidence of criminal activity and Humphreys still had a valid search warrant authorizing the search of Plaintiff's residence.  Humphreys Decl., ¶ 7; Stabler Decl., ¶ 2.  Accordingly, Defendants have met their burden to show that Humphreys reasonably relied on the warrant, issued by a neutral magistrate, when searching and seizing persons or property under the warrant and is entitled to qualified immunity.

## B.    Probable Cause

In addition, as discussed above, Defendants provide ample evidence of probable cause to arrest Plaintiff.  "Under the Fourth Amendment, a warrantless arrest requires probable cause."  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  Probable cause to arrest exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."  *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citations omitted).  The officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  *Id.* at 153; *see also United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) ("Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a

crime.") Generally, probable cause for an arrest "may be satisfied by an indictment returned by a grand jury." *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (citing *Gerstein v. Pugh*, 420 U.S. 103, 117 (1975).)

Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge. *See Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (noting that, because the defendant officer had probable cause to arrest the plaintiff for one charge, the arrest was not unconstitutional even if the officer lacked probable cause for another charge). The existence of probable cause is a complete defense to a claim for wrongful arrest. *See Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986) ("a police officer has immunity if he arrests with probable cause"); *Cabrera v. Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1988) ("To prevail on his section 1983 claim for false arrest ... [the plaintiff] would have to demonstrate that there was no probable cause to arrest him.").

The analysis discussing probable cause for Plaintiff's arrest is discussed above. "[T]the analysis of probable cause under Oregon law is the same as the analysis under federal law." *Daley v. McKoy*, No. 3:17-CV-00718-BR, 2018 WL 2470984, at *6 (D. Or. May 31, 2018), *aff'd*, 773 F. App'x 387 (9th Cir. 2019). Under the federal standard, Plaintiff's claim for an unreasonable seizure resulting from an unlawful arrest is defeated by the existence of probable cause for a single criminal offense. For the same reasons as discussed under Plaintiff's state law theory of liability, Defendants have submitted evidence of probable cause which Plaintiff has not controverted. Accordingly, Defendants' motion is granted on Plaintiffs' Fourth Amendment claim.

## III.    Post-Arrest Detention

To the extent that Plaintiff alleges that Defendants are liable for false arrest for his post-arrest detention at the Lincoln County Jail, Defendants point out Plaintiff has not alleged that Humphreys, or the City, had any involvement in Plaintiff's post-arrest or arraignment detention. The record shows that Plaintiff's post-arraignment detention resulted from a series of decisions or rulings from the Lincoln County Circuit Court, or from Plaintiff's own actions of firing his lawyer and waiting the prescribed time for a new appointment. Plaintiff presents no evidence that any law was violated by his detention in the Lincoln County Jail.

## IV.    Respondeat Superior

Plaintiff claims the City of Newport is liable to Plaintiff under a theory of *respondeat superior*. Compl. ¶ 28. Defendants assert that this claim fails as a matter of law because Plaintiff does not allege any state-law claims implicating the City under any theory of liability from his allegations against Humphreys. Mot. at 28.

Under Oregon law, the City is statutorily liable for the torts of its employees or agents. ORS 30.265(1) & (2). Plaintiff does not allege any independent theory of liability against the City. Therefore, the allegations against Humphreys are Plaintiff's only nexus of liability against the City. As discussed above, Plaintiff's state-law claims against Humphreys fail as a matter of law for several reasons. As a result, Plaintiff's state-law claims against the City fail for the same reasons. To the extent Plaintiff asserts the City is liable under a *respondeat superior* theory for Plaintiff's federal law claim (aside from his *Monell* claim), the liability of a local

governing body, like the City, only arises when action under an official policy or custom caused a constitutional tort, not on the basis of *respondeat superior*. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978); *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). Therefore, if Plaintiff asserts a *respondeat superior* claim against the City of Newport under federal law, this claim fails as a matter of law.

## V.    Monell Claim; 42 U.S.C. § 1983

Plaintiff alleges that Humphreys acted as a "lead detective" and thus a "final policymaker" when he "made the ultimate decision to search" Plaintiff's living space. Compl. ¶¶ 39, 40. Defendants assert that this claim fails because no evidence supports such a theory for liability. Mot. at 29.

"[M]unicipal liability under § 1983 cannot be founded on a theory of *respondeat superior*." *Webb v. Sloan*, 330 F.3d 1158, 1163-64 (9th Cir. 2003). Congress intended to hold municipalities liable only when action under official municipal policy of some nature caused a constitutional tort. *Monell*, 436 U.S. at 691. A local government may be responsible for a single decision by government policymakers under limited circumstances.

When a decision to adopt a particular course of action is properly made by that government's authorized decisionmakers, it represents an act of official government "policy" as that term is commonly understood. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Not every decision by a government official automatically subjects the government to liability under 42 U.S.C. § 1983. Government liability

attaches only where the decisionmaker possesses final authority to establish government policy related to the action ordered. *Id.* The fact that a particular official, even a policymaking official, has discretion in the exercise of their functions does not, without more, give rise to government liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the government entity can be held liable. *See, id.* at 482-83.

Plaintiff has not established liability under this theory. He has not shown that Humphreys had "final policymaking authority" such that the challenged action itself (Plaintiff's arrest) "constituted an act of official government policy." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). Plaintiff has not shown that Humphreys is a government policy making official or that Humphreys has the responsibility for establishing final government policy for the City. Accordingly, Plaintiff's theory of liability is untenable under the law and Defendants are granted summary judgment on this claim.

## CONCLUSION

Defendants have established the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324. Accordingly, Defendants' motion for summary judgment, ECF No. 26, is GRANTED as to all of Plaintiff's claims. This case is dismissed without prejudice. Judgment of dismissal shall be entered accordingly.

It is so ORDERED and DATED this 26th day of April 2024

/s/Ann Aiken
ANN AIKEN
United States District Judge